T.C. Memo. 1997-538


UNITED STATES TAX COURT


CLYDE E. OWENS AND MARIE W. OWENS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JANET L. FELTRINELLI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 26716-93, 27265-93.    Filed December 4, 1997.


Clyde E. Owens, Marie W. Owens, and Janet L. Feltrinelli, pro se.

<u>Amy A. Campbell</u> and <u>Lawrence B. Austin</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined that petitioners are liable for income tax deficiencies and penalties as follows:

| Clyde E. Owens and Marie W. Owens | | |
|---|---|---|
| Year | Deficiency | Accuracy-related penalty |
| 1989 | $33,384 | $6,677 |
| 1990 | 41,078 | 8,216 |

| Janet L. Feltrinelli | | |
|---|---|---|
| Year | Deficiency | Accuracy-related penalty |
| 1989 | $2,635 | $527 |
| 1990 | 8,191 | 1,638 |

After concessions we must decide the following issues:

1.  Whether respondent violated petitioners' Constitutional rights in these cases.  We hold that respondent did not.

2.  Whether petitioners' documentary evidence was properly excluded because petitioners failed to comply with the Court's orders to identify in writing and exchange that evidence with respondent.  We hold that it was.

3.  Whether respondent's determination of petitioners' income tax deficiency is correct.  We hold that it is, except as conceded by respondent.

4.  Whether petitioners are liable for self-employment tax. We hold that they are.

5.    Whether petitioners are liable for the accuracy-related penalty for negligence or intentional disregard of the rules or regulations for 1989 and 1990.  We hold that they are.

Section references are to the Internal Revenue Code in effect in the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

## I.  FINDINGS OF FACT

### A.  Petitioners

#### 1.  Mr. and Mrs. Owens

Petitioners Clyde Eugene Owens (Mr. Owens) and Marie W. Owens (Mrs. Owens) are married and lived in Tallapoosa, Georgia, when they filed their petition in these cases.  They have four children:  Bryan, Dawn, Elaine, and Jason.  Dawn was married and lived with her husband in 1989 and 1990.

At the time of trial, Mr. Owens had been in business for 40 years.  He and Mrs. Owens were self-employed in 1989 and 1990.  They operated the Big O Truck Stop and Burger Chick, a fast food restaurant described further below at paragraph I-B-4.

Mr. and Mrs. Owens owned the land on which the businesses were located.  They hoped to build a motel on their land.  They had a sign that said they would open a motel there in 2001.  In 1989 and 1990, they had grapevines and had on their property what they called a vineyard master house, not otherwise described in the record.  The vines began to die in 1990.

Mrs. Owens borrowed $20,000 from Liberty Savings Bank on June 15, 1989.  The interest on that loan was $2,027.37 in 1990.

Mr. and Mrs. Owens were required to have life insurance to get an SBA loan.  During the years in issue, they owned two cars: a Lincoln and a Pontiac Sunbird.  During those years, they also owned a 1989 low boy trailer, a 1989 White tractor, and a 1989 tanker truck.

2.   Ms. Feltrinelli

Petitioner Janet L. Feltrinelli (Ms. Feltrinelli) lived in Tallapoosa, Georgia, when she filed her petition in these cases. In 1989 and 1990, she was a self-employed single parent of a young child.

B.   Petitioners' Businesses

1.   Background

In 1989 and 1990, Mr. Owens operated Big O Truck Stop, Ms. Feltrinelli operated Big O Barbecue, and Mrs. Owens operated Burger Chick.  Big O Truck Stop and Big O Barbecue are in the same building.  Mr. Owens and Ms. Feltrinelli each have an office in the building in which the Big O businesses are located.  Mrs. Owens has an office in the Owens' residence.  Mr. and Mrs. Owens deducted some of their residential utilities expenses as a business expense.

Petitioners worked 70 hours a week at the businesses.  They did everything required to operate the businesses, such as make

sales, keep records, take out the garbage, and clean the restrooms.

2. <u>The Big O Truck Stop</u>

Mr. Owens bought gasoline and diesel fuel from Murphy Oil, hauled it to Big O Truck Stop, and sold it to the public. Mr. Owens also sold beer and ice at Big O Truck Stop. Big O Truck Stop competes with larger establishments like Nobels, Chevron, and Robinson's. Mr. Owens made all of the business decisions for Big O Truck Stop. He did not receive a salary for managing Big O Truck Stop.

The bank account that Mr. Owens used for Big O Truck Stop was in the name of Mr. Owens, Jason Owens, and Bryan Owens doing business as "Big-O". The sign advertising Big O Truck Stop said "Owens' Big-O Barbecue & Truck Stop". Telephone calls to Big O Truck Stop were answered "Owens".

Mr. and Mrs. Owens reported truck lift and tire change income as part of the income for Big O Truck Stop on their 1989 and 1990 returns.

3. <u>Big O Barbecue</u>

Big O Barbecue was located with Big O Truck Stop. Ms. Feltrinelli sold barbecue and sandwiches at Big O Barbecue.

4. <u>Burger Chick</u>

Mr. and Mrs. Owens owned Burger Chick, a fast food retail business that operated from a trailer. In 1989 and 1990, Burger

Chick competed with a McDonalds and a Hardees. Mrs. Owens employed students to work part time, 10 to 15 hours a week.

Mrs. Owens wrote checks for utilities in 1989 totaling $16,346.09 on Burger Chick's account. Her children wrote two checks totaling $2,409.83.

The combined gross income of Big O Truck Stop, Big O Barbecue, and Burger Chick was between $500,000 and $1 million er year in the years in issue.

5. Petitioners' Supplies

Most of petitioners' suppliers deliver once a week. Mr. and Mrs. Owens do not have much storage room at the businesses. They sometimes used their cars to buy supplies and food for their businesses. Walker Meat in Carrolton delivers meat to petitioners once or twice a year. Petitioners go to Walker Meat to get meat at other times. They go to the grocery store to get items such as cheese and mayonnaise when necessary. They usually pay cash for these items. Ms. Feltrinelli sometimes used her car to go to Sam's Club to get pork and barbecue for Big O Barbecue.

C. Petitioners' Income Tax Returns

Robert H. King (King), a self-employed accountant, prepared Mr. and Mrs. Owens' and Ms. Feltrinelli's 1989 and 1990 income tax returns. The Owens gave King the information he used to prepare their returns. On their Schedules C for 1989 and 1990, Mr. and Mrs. Owens reported that their businesses were "Burger Chick - Vineyard - Towing Service". They did not refer to Big O

Truck Stop. Mr. and Mrs. Owens reported as income receipts from a towing service not otherwise described in the record. Mr. and Mrs. Owens deducted $1,820 for 1989 to maintain their grapevines. They never had a profit from their grapevines.

On their Schedule C, Mr. and Mrs. Owens deducted payments totaling $8,200 for 1989 and $8,100 for 1990 to their children Bryan, Dawn, and Elaine for their college education. The Owens' children did some work as needed for their parents' businesses. Mr. and Mrs. Owens did not keep records of their children's work in their businesses.

Mr. and Mrs. Owens reported that they were liable for income tax of $2,361 for 1989 and $3,878 for 1990.

Ms. Feltrinelli attached a Schedule C to her 1990 return. She described the business as "gas, oil, and food (restaurant)", and reported that the business name was "Big O".

D.  Petitioners' Audit and the Notices of Deficiency

Revenue Agent Ken McEver (McEver) audited petitioners' returns for the years in issue. Respondent determined deficiencies in part because petitioners were not entitled to or could not substantiate certain deductions. Respondent also determined that the income and expenses attributable to Big O Truck Stop should be reallocated under section 482 from Ms.

Feltrinelli to Mr. and Mrs. Owens.[1]  Respondent determined that petitioners' tax returns should be changed as follows:

| Mr. and Mrs. Owens | | |
|---|---|---|
| Adjustments to income & expenses | 1989 | 1990 |
| Dependency exemption | $2,000 | $2,050 |
| Schedule C expenses | 75,257 | 50,570 |
| Franchise fee income | (5,000) | |
| Sec. 482 allocation | 27,569 | 32,235 |
| Truck wash | | 3,330 |
| Truck lift | | 2,220 |
| Truck changer | | 1,250 |
| Sale of alcoholic beverages | | 99,662 |
| Cost of goods sold - Alcoholic beverages | | (76,663) |
| Self-employment tax deduction | | (6,279) |
| Total | $99,826 | $108,375 |

---

[1] On brief, respondent conceded that the adjustments under sec. 482 do not apply.

| Ms. Feltrinelli | | |
|---|---|---|
| Adjustments to income & expenses | 1989 | 1990 |
| Car and truck expenses | $1,684 | $1,782 |
| Franchise fee income | 5,000 | 5,000 |
| Sec. 482 allocation | 228 | 19,010 |
| Self-employment tax deduction | | (1,822) |
| Total | $6,912 | $23,970 |

Mr. and Mrs. Owens reported that their cost of goods sold and business expenses were $284,288 in 1989 and $302,923 in 1990. Respondent allowed $209,031 for 1989 and $252,353 for 1990 for those items.

Ms. Feltrinelli reported that she had gross receipts of $704,593 in 1989 and $781,212 in 1990. Respondent determined that her gross receipts were $161,591 in 1989 and $198,759 in 1990.

Ms. Feltrinelli claimed that her total cost of goods sold and business expenses were $686,058 in 1989 and $763,718 in 1990. Respondent allowed $142,828 in 1989 and $162,255 in 1990.

E. Partial Trial

1. Pretrial Activities

These cases were calendared for trial at the sessions in Atlanta, Georgia, beginning on September 26, 1994, for Mr. and Mrs. Owens and on October 31, 1994, for Ms. Feltrinelli. The

Court's standing pretrial order was attached to the Court's orders setting the cases for trial. It provides that any documents or materials which a party expects to use at trial (except to impeach), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The standing pretrial order also notified the parties that the Court may refuse to receive in evidence any document or material not stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown.

Shortly before trial, petitioners moved for a continuance to give them more time to get records from third parties. Petitioners' motion was granted. The Court again served the standing pretrial order on the parties on November 29, 1994, and reset these cases for trial at the session beginning May 1, 1995. On April 21, 1995, petitioners filed a second motion to continue. Petitioners' motion was granted. In their second motion to continue, petitioners alleged that respondent's agents had acted improperly during the audit.

The Court again served the Court's standing pretrial order on August 24, 1995, and reset the cases for trial at the session beginning on January 29, 1996. Respondent proposed stipulated findings of fact to petitioners. Petitioners did not respond. Respondent filed a motion for the Court to order petitioners to show cause why respondent's proposed stipulation of facts should

not be deemed admitted.  The Court ordered petitioners to show cause by December 29, 1995.

On December 29, 1995, petitioners filed their third motion to continue.  In it, they again said that they needed more time to prepare for trial.  On January 2, 1996, the Court denied petitioners' motion.

On January 2, 1996, petitioners filed a response to the Court's order to show cause in which they admitted or denied most of the stipulations that respondent proposed.  On January 2, 1996, the Court deemed some of the paragraphs to which petitioners did not respond admitted and others denied.

On January 19, 1996, petitioners filed their fourth motion to continue.  In it, they again stated that they needed more time to prepare and again alleged that respondent's agents' conduct had been improper.  The Court denied petitioners' motion.

2.    Partial Trial

Petitioners filed a pretrial memorandum in which they criticized McEver, alleged that respondent had a personal vendetta against them, and alleged that respondent had violated their rights under the U.S. Constitution and various Civil Rights Acts.

Petitioners were present for trial in February 1996 (the partial trial).  Lawrence B. Austin (Mr. Austin) represented respondent.  At the partial trial, Mr. Owens repeated the allegations made in petitioners' pretrial memorandum.

Petitioners brought many documents with them to trial. However, the documents were disorganized and had not been exchanged as required by the three standing pretrial orders previously served on petitioners. Petitioners testified and offered into evidence some documents which they had not exchanged before trial.

Ms. Feltrinelli had major surgery about a month before the partial trial. At the start of the trial, the Court asked Ms. Feltrinelli if she felt like she could go ahead with the trial. Ms. Feltrinelli said that she thought that she could. However, she became very uncomfortable during the trial. The Court halted the trial because it could not be completed in the time available and because Ms. Feltrinelli did not feel well. The Court asked respondent's agent Dorothy Poole (Poole) to meet with Mrs. Owens and Ms. Feltrinelli later to review petitioners' documents to try to settle the cases.

### 3. Respondent's Agent's Meeting With Petitioners

Several months after the partial trial, Poole met with Mrs. Owens and Ms. Feltrinelli. They met for 35 hours over 4 days. Poole reviewed documents that Mrs. Owens and Ms. Feltrinelli provided. Poole listed the documents that she saw and gave a copy of the list to Mr. Owens and Mr. Austin. The parties agreed that petitioners would bring the documents to a conference with Mr. Austin and Appeals Officer Harry Neville where they could be

photocopied.  That conference was never held for reasons not stated in the record.

F.    Further Trial

    1.    Exchange of Documents

On July 19, 1996, these cases were again set for trial at the next regular session of the Court in Atlanta, Georgia.  We again attached the standing pretrial order, as described above. See paragraph I-E-1.  In an attempt to ensure that the cases were ready for trial, and to prevent recurrence of the problems just described, the Court issued orders on July 10, July 19, July 24, and October 7, 1996, requiring the parties to state their position on each issue in the notice of deficiency, identify in writing documents to be used at trial, exchange documents, stipulate to them, and file pretrial memoranda earlier than required by the standing pretrial order.

Respondent complied with the Court's orders.  Petitioners did not.  Petitioners argued that respondent's agents had harassed them.  Petitioners attached copies of Court orders; various motions filed by petitioners; documents related to Ms. Feltrinelli's January 1996 surgery; petitioners' tax returns for the years in issue; the notices of deficiency; a campaign advertisement of Mr. Owens attacking the Internal Revenue Service (IRS); copies of checks that Mrs. Owens wrote to the IRS in December 1979, January 1982, September 1983, and 1985 (illegible month), and that Ms. Feltrinelli wrote in October 1981; copies of

quarterly Federal excise tax returns for September 30 and December 31, 1981; and various documents concerning a levy in January 1996. At the time of trial, petitioners had not identified or exchanged any other documents they would offer into evidence at trial.

2. <u>Trial</u>

At trial, Mr. Owens continued to criticize respondent's agents. He leveled several personal insults against respondent's agent McEver.

Petitioners refused several requests from the Court that they address issues raised by the notices of deficiency. The Court advised petitioners that the notices of deficiency are presumed to be correct and that they should try to meet their burden of proving that they are not correct. Mr. Owens said that he understood the Court's instructions.

Petitioners contended that respondent violated their rights under the 1st, 4th, 5th, 7th, 8th, and 14th Amendments to the U.S. Constitution and various Civil Rights Acts. Mr. Owens said that each petitioner should receive $100,000 in damages.

Petitioners sought to introduce into evidence a large quantity of documents that petitioners had not exchanged, identified in writing, or stipulated as required by the Court's orders described above. Respondent's counsel did not object to the admission of documents if Poole had seen them at her meeting with Mrs. Owens and Ms. Feltrinelli. Petitioners could not

provide those documents at that time because they could not identify which of the materials they brought to trial Poole had seen. Thus, the Court told petitioners that it would admit into evidence documents that Poole had seen if petitioners served copies of them on the Court and respondent's counsel within 30 days after the trial.[2]

## II.  OPINION

Respondent's determinations in the notices of deficiency are presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

A.   Petitioners' Constitutional and Other Contentions

Petitioners contend that respondent's agents have been abusive to petitioners and that respondent has violated several of petitioners' rights under the U.S. Constitution and Civil Rights Acts of 1963 and 1964.

1.   Events Before and During The Audit

Petitioners contend that respondent's agents were abusive to them before and during the audit of these cases. Petitioners contend that respondent's agents had a personal vendetta against them. Mr. Owens testified that he had a confrontation with an

---

[2] Respondent did not object to the admission of these documents under this procedure.

IRS agent, for which Mr. Owens was indicted, tried, and acquitted in 1977. Mr. Owens also testified that the IRS seized more than $12,000 from Ms. Feltrinelli on dates not specified in the record. Petitioners contend that respondent's agents acted improperly during the audit. Petitioners criticized respondent's original auditor and charged that McEver and McGovern (an otherwise unidentified person) conspired against Mr. Owens and Ms. Feltrinelli to deprive them of their records. Mr. Owens offered no meaningful details about or corroboration of his claims.

Petitioners have not shown that respondent's agents were abusive to them, acted improperly, or had a vendetta against them in any way.

2. Petitioners' Constitutional and Civil Rights

Petitioners contend that they are entitled to relief from liability for the income tax deficiencies and penalties at issue in these cases because respondent violated their rights under the 1st, 4th, 5th, 7th, 8th, and 14th Amendments to the U.S. Constitution and various Civil Rights Acts.

Petitioners contend that respondent violated their rights under the 1st Amendment of the U.S. Constitution by retaliating against Mr. Owens because he pledged in his Congressional campaign to place the burden of proof in tax cases on the IRS. Petitioners contend that their right to be secure in their papers and protected against unreasonable search and seizures under the

4th Amendment to the U.S. Constitution were violated because someone trashed the offices at the Big O businesses in 1990 and 1991 and that respondent seized their bank accounts more than 12 times. Petitioners contend that their 5th Amendment guarantee against double jeopardy was violated because we had the February partial trial and the October trial,[3] that their 7th Amendment right to a trial by jury has been violated,[4] that their experiences in this case have been cruel and unusual punishment in violation of the 8th Amendment, and that respondent deprived them of life, liberty, or property in violation of the 14th Amendment. Petitioners also make vague allegations that respondent violated their civil rights and contend that each of them should receive $150,000[5] in damages and $91,000 in tax credits.

Petitioners offer no reasons or authority to support these claims. They have no bona fide basis for their positions. Petitioners' vague and unsubstantiated allegations do not persuade us that they are entitled to relief from liability for

---

[3] The prohibition against double jeopardy does not apply in civil cases or bar the procedure we followed. Ianniello v. Commissioner, 98 T.C. 165, 178-179 (1992).

[4] Tax Court petitioners have no right to a jury trial. Mathes v. Commissioner, 576 F.2d 70, 71-72 (5th Cir. 1978), affg. T.C. Memo. 1977-220.

[5] Petitioners do not explain why they claimed more damages on brief than the amount Mr. Owens claimed at trial ($100,000).

the income tax deficiencies and penalties at issue in these cases.

B.    Exclusion of Evidence

Petitioners offered documents into evidence at the further trial that they had not exchanged or identified in writing as required by our standing pretrial orders dated April 22, August 24, and November 29, 1994, and other orders dated July 10, July 19, July 24, and October 7, 1996.  We did not admit the documents into evidence.  Petitioners contend that it is unfair to exclude the evidence that they offered.  We disagree.

Petitioners do not deny receiving any of these orders.  Mr. Owens testified that he understood that the Court required the parties to identify the documents in writing and exchange them before trial.  Petitioners do not claim that they tried to comply with these orders.  Materials not provided in compliance with our pretrial orders may be excluded from evidence.  Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996).  Exclusion of documents because they were not exchanged as required by the standing pretrial order is particularly justified if they are complex and voluminous, as here.  See Kodak v. Commissioner, T.C. Memo. 1991-485, affd. without published opinion 14 F.3d 47 (3d Cir. 1993).  We conclude that we properly sustained respondent's objection.

We admitted the documents into evidence that petitioners had shown to Poole.  Those documents do not establish that

petitioners had less income or more deductions or cost of goods sold than respondent had allowed as a result of Poole's meetings with petitioners. The amounts of deductions and cost of goods that petitioners substantiated in those documents are less than respondent allowed, and those documents do not show that petitioners had less income than respondent determined.

Petitioners contend that the Court gave respondent the power to decide what documents were admissible in evidence. We disagree. Although not required to do so, respondent did not object to the admission of certain documents that petitioners had failed to exchange and identify in writing before trial as required by several Court orders.

Petitioners contend that the Court allowed respondent to be late many times but repeatedly denied requests by petitioners. We disagree. The Court granted two of petitioners' motions to continue and one of respondent's motions to file a trial memorandum when respondent substituted counsel in these cases.

At trial, petitioners questioned whether section 7522 has any bearing on these cases. Section 7522 requires that respondent describe in a notice of deficiency the basis for and identify the amounts of tax due, interest, and any additional amounts, additions to tax, and assessable penalties. Sec. 7522(a) and (b). The notices of deficiency at issue here complied with section 7522. They include a clear written

explanation for each adjustment that respondent made, and they identify the amounts of tax, interest, and penalties due.

Petitioners have only themselves to blame for their difficulties in these cases. They had many opportunities to exchange evidence with respondent as required by our orders. Petitioners seemed to think that insulting respondent's agents would enhance their chance of prevailing and excuse their failure to take steps necessary to fully present their cases on the merits.

C.   Whether Respondent's Determination Should be Sustained

   1.   Whether Petitioners Had Less Income Than Determined by Respondent

Petitioners contend that they had less income than respondent determined. Mr. Owens testified generally that the Big O businesses did not generate as much income as respondent determined, and that the Big O businesses were small and competed with larger firms. He did not give any information to support his conclusionary claims. Mrs. Owens testified briefly. Her testimony did not show that respondent's determination was incorrect. Ms. Feltrinelli did not testify. We sustain respondent's determination about the amount of income petitioners received in 1989 and 1990, except as conceded by respondent.

2.  Whether Petitioners Had More Deductions or Cost of Goods Sold Than Allowed by Respondent

Respondent's agent audited petitioners in these cases and allowed deductions and cost of goods sold to the extent substantiated by petitioners.  Petitioners contend that they may deduct more than respondent allowed.

a.  Deductions for The Owens' Vineyard

Mr. and Mrs. Owens contend that they may deduct $1,820 for vineyard upkeep in 1989.  We disagree.

Mr. and Mrs. Owens had no records for this activity and no experience in the business.  There is no evidence how they conducted this activity.  Mr. and Mrs. Owens denied that they made wine.  There is no evidence that the vineyards produced any income.  Mr. and Mrs. Owens did not show that their vineyard was an activity for profit.

b.  Franchise Payment

Petitioners contend that Mr. Owens orally gave Ms. Feltrinelli a franchise to operate Big O Truck Stop.  Petitioners contend that Ms. Feltrinelli made a $5,000 franchise payment to Mr. Owens in the years in issue.  Other than Mr. Owens' testimony, there is no evidence that Ms. Feltrinelli paid $5,000 to the Owens in 1989 or 1990.  The signs, telephone-answering procedure, and bank accounts suggest that Mr. Owens owned and operated Big O Truck Stop.  Petitioners have failed to prove Ms.

Feltrinelli paid a $5,000 franchise fee to the Owens in 1989 or 1990.

### c. Payments for The Owens' Children's College Education

Mr. and Mrs. Owens contend that they may deduct $8,200 in 1989 and $8,100 in 1990 that they gave to their children to go to college. Mr. and Mrs. Owens testified generally that their children worked as needed for their businesses. Mr. and Mrs. Owens did not keep records of this work. We conclude that Mr. and Mrs. Owens may not deduct these amounts.

### d. Other Claimed Deductions and Cost of Goods Sold

There is no evidence to support petitioners' contentions that they may deduct more than respondent allowed for charitable contributions, wages for part-time help, utilities, insurance, interest and taxes, a tractor, a low boy trailer, a tanker truck, and car and truck expenses, or that their cost of goods sold was more than respondent allowed. Mrs. Owens testified that she lost some of the truck expense and car deduction records for the years in issue, but petitioners did not offer enough other evidence to show that they may deduct these items. Respondent conceded that petitioners may deduct some items based on statements by petitioners. For example, respondent concedes that petitioners may deduct some payments for utilities, goods and supplies, and employees' wages.

We conclude that petitioners did not establish their right to more deductions or cost of goods sold than respondent allowed for 1989 and 1990.

D.   Self-Employment Tax

Respondent determined that petitioners are liable for self-employment tax under section 1401 and that they may deduct one-half of the self-employment tax they paid under section 164(f). Petitioners concede that they were each self-employed. We sustain respondent's determination on this issue.

E.   Whether Petitioners Are Liable for the Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that petitioners are liable for the accuracy-related penalty for negligence for 1989 and 1990 under section 6662(a) and (c). Petitioners contend that they are not liable for the accuracy-related penalty for negligence. We disagree.

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment to which section 6662 applies. Sec. 6662(a). Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). For purposes of section 6662(a), negligence is a failure to reasonably attempt to comply with the Internal Revenue Code. Sec. 6662(c). The accuracy-related

penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part of the underpayment and that the taxpayer acted in good faith based on the facts and circumstances. Sec. 6664(c)(1). Failure to keep adequate records is evidence of negligence. Marcello v. Commissioner, 380 F.2d 509, 511 (5th Cir. 1967), affg. T.C. Memo. 1964-303; Magnon v. Commissioner, 73 T.C. 980, 1008-1009 (1980).

Petitioners bear the burden of proving that they were not negligent. Rule 142(a). They did not do so. They did not show that they had good faith or reasonable cause. Ms. Feltrinelli concedes that her records were inadequate. Petitioners did not show that they were not negligent.

Petitioners contend that they are not liable for the accuracy-related penalty for negligence because they do not owe taxes. We disagree for reasons stated above.

We conclude that petitioners are liable for the accuracy-related penalty for negligence for 1989 and 1990 under section 6662(a) and (c) and that each petitioner's understatement for each year in issue is due to negligence.

To reflect concessions and the foregoing,

Decisions will be

entered under Rule 155.